IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KIMBERLEY A. BAILEY | ) |
| | ) |
| Plaintiff, | ) C.A. No.: 05-183 |
| | ) |
| v. | ) Trial by Jury Demanded |
| | ) |
| COMMERCE NATIONAL INSURANCE | ) |
| SERVICES, INC., a New Jersey corporation. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

### I. Introduction

1. By way of this action, Plaintiff, Kimberley A. Bailey, seeks redress under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, and the Civil Rights Act of 1991 ("Act"), on the grounds that the Defendant retaliated against her for complaining about Title VII violations in the workplace.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiff seeks to vindicate rights possessed by her under the laws of the United States of America. Venue in this District is proper pursuant to 28 U.S.C. § 1391.

3. On November, 6, 2003, Plaintiff filed a charge of discrimination against the Defendant with the State of Delaware, Department of Labor, Division of Industrial Affairs ("Department"). Following an effort at mediation by the Department, the matter was referred to the U.S. Equal Employment Opportunity Commission ("EEOC"). On January 10, 2005, Plaintiff received a Notice of Right to Sue letter from the EEOC. A copy of the Notice of Right to Sue letter issued by the EEOC to Plaintiff is attached hereto as Exhibit "A".

## I. Background Facts

4. Plaintiff, currently resides at 7 Giliberti Lane, Newark, Delaware.

5. Defendant, is a New Jersey corporation engaged in the insurance business in the State of Delaware, and elsewhere. Ms. Bailey was employed at Defendant's facility located in the Delle Donne Corporate Center on Centre Road, Wilmington, Delaware. From this location, Defendant sells and services various kinds of personal and business insurance products, mostly through a network of independent insurance brokers and agents located throughout the country.

6. Ms. Bailey began employment with Defendant on August 27, 2001 as a Senior Customer Service Representative. That position entailed handling telephone, internet, and mail inquiries from insurance brokers and others trying to place personal and business insurance policies with Defendant. Ms. Bailey worked in this position full time until May 2002 when she was promoted to a supervisor position in a newly created department known as "Main Street" ("department"). Ms. Bailey's new position entailed direct supervision over ten Customer Service Representatives and five sales people working in the department. Ms. Bailey's immediate supervisor was Mr. Steven Duncan.

7. Ms. Bailey enjoyed very much working for Defendant. She liked her earlier position as a Senior Customer Service Representative, and was excited to be in the new supervisory position in the department. Ms. Bailey had never held a supervisory position before with Defendant, and was determined to show that she could be a talented manager. Ms Bailey was dedicated to Defendant, and the employees under her supervision. For example, within a few months of taking on the supervisor position in the department, Ms. Bailey hired and trained all ten customer service representatives, and all five sales representatives working in the department. She represented the department and Defendant at various business meetings and functions. Ms. Bailey created the department's procedure

manual, during work hours and on her own time.

8. In the only performance evaluation done of Ms. Bailey in her supervisor position, she received either superior or outstanding evaluations in the following areas: job knowledge, customer service, work quality, initiative, compliance/business ethics, organization and planning, strategic focus, communications, leadership, and motivation. In addition, her supervisor commented as follows when giving Ms. Bailey a rating of outstanding in the area of leadership and motivation:

> "Kim leads by example. She stays late, does the same work as her staff and supports their efforts. Her daily input into their individual tasks, client relationship and ongoing support of their extra work effort helps the team stay focused. She inspires her staff to do more, better and faster and have fun."

### III. Ms. Bailey is the Victim of Sexual Harassment

9. Beginning in December 2001, Ms. Bailey's supervisor, Steven Duncan, began to sexually harass her in and outside the workplace. The harassment included: fondling her back, breasts, and buttocks; forcibly kissing her; suggesting that he and Ms. Bailey have sex on upcoming business trips; stating that he wanted to have sex with her; making comments to male business associates about portions of Ms. Bailey's anatomy; rubbing her legs and inner thighs; pushing her hand between her legs and asking her to masturbate in his car; inviting her to join him and his girlfriend in a hotel room to have sex; and attempting to convince her to have sex with a business associate to improve the relationship between Defendant and the business associate.

10. The harassment continued over a fourteen month period. Because Ms. Bailey was completely embarrassed by the harassment, and fearful of either losing her job, or becoming an outcast, she did not report the harassment to Defendant until March 2003, when she sent a letter summarizing what occurred to Defendant's Human Resources Department. A copy of Ms. Bailey's

letter is attached hereto as Exhibit "B"

### IV. Retaliation against Ms. Bailey

11. For eight weeks following Ms. Bailey's report of sexual harassment, she was required to continue to work side by side with Mr. Duncan. In addition, Ms. Bailey was completely excluded from the investigation, and was not given any information about the status of the investigation until June 2003, when she learned that Mr. Duncan was no longer employed by Defendant.

12. In addition, after Ms. Bailey made the sexual harassment charge, she began to be excluded from meetings, projects and other matters concerning the operation of the department, despite the fact that she was a supervisor in the department, and, indeed, an integral part of the success that the department had achieved since its creation.

13. After Ms. Bailey made the sexual harassment charge, Defendant improperly decided just after concluding its " investigation" of Ms. Bailey's sexual harassment charge against Mr. Duncan, that "both parties had engaged in inappropriate behavior in violation of Commerce guidelines on professionalism and its policies and procedures". Defendant made this determination based at least in part on lies told by Mr. Duncan while he was defending himself against the sexual harassment charge. Defendant's conclusion that Ms. Bailey behaved improperly was made without notifying Ms. Bailey of the inappropriate behavior she allegedly committed, and without giving her any opportunity to respond to this conclusion.

14. After Ms. Bailey made the sexual harassment charge, Defendant decided that it needed to "assist Ms. Bailey in understanding her role as a supervisor". Defendant made this decision despite the fact that six months earlier, Ms. Bailey's performance evaluation rated both her job knowledge and her work quality as "consistently meets or exceeds job requirements, skills and abilities are highly

developed and applied with consistent good efforts". In the same performance evaluation, Ms. Bailey's leadership and motivation skills were rated at the highest level available on the evaluation scale, namely;

> "Performance is characterized by outstanding accomplishments far exceeding job requirements, skills and abilities are highly developed and applied with consistent effort. Sets example for others".

15. In order to assist Ms. Bailey in "understanding her role as a supervisor" she was instructed to attend six (6) classes, all of which were held hours away. However, the only class she was able to attend was not, according to the instructor of the class, designed for the insurance business. Specifically, Ms. Bailey drove two hours to attend a class in New Jersey called "Conducting a Team Meeting" which was designed for interns on the banking side of Defendant's business, not the insurance side. Ms. Bailey attended the class but because it did not address issues related to her work, it was largely a waste of time. Upon information and belief, no other similarly situated persons were required to take similar classes under similar circumstances.

16. After Ms. Bailey made the sexual harassment charge, the new Director of the Department, Mary Corcoran, admonished and sent Ms. Bailey home to change her clothes, in the presence of another employee for wearing a pair of "capri" slacks to work that Ms. Bailey had worn to work before. Ms. Corcoran claimed she wanted only business suits worn by management personnel. However, other management personnel, including the Assistant Director of the department, routinely wore denim jeans to the office.

17. After Ms. Bailey made the sexual harassment charge, Defendant relieved her of duties she previously performed, and excluded her from matters in which she was previously involved, including: the SEMSI project, goal setting for the employees directly supervised by Ms. Bailey, and

the supervision of five sales personnel. Ms. Bailey was embarrassed in front of others in the department when Defendant announced for the first time in a department meeting that Ms. Bailey would no longer be supervising the five sales people.

18. After Ms. Bailey made the sexual harassment charge, virtually every part of her job performance was scrutinized with a thoroughness not applied to others, including the grammar, sentence structure, and spelling, in informal e-mails sent internally. Ms. Bailey was also openly criticized for organizing a company event at a bowling alley which was approved in advance by Ms. Corcoran on the grounds that the bowling was not a sophisticated activity, and that Ms. Bailey should have organized a golf outing.

19. On August 12, 2003, Ms. Bailey was sitting in for a customer service representative who was out sick, and also performing her normal duties of supervising the rest of the representatives in the department, when she responded to an inquiry made by a subordinate by using profanity.

20. It was not uncommon in the department for the customer service representatives, Ms. Bailey, and others, including the former Director, Mr. Duncan, the then current Director, Ms. Corcoran, and the then current Assistant Director, Ms. Phipps, to frequently use similar words under similar and different circumstances throughout the entire time that Ms. Bailey worked for Defendant. While such conduct was not encouraged, at no time was anyone ever disciplined by Defendant for using profanity in the workplace in the way that Ms. Bailey used it on August 12, 2003.

21. The employee to whom the profanity was directed did not complain to management, and was not adversely affected by it. In fact, she responded back later with laughter and profane gestures shortly thereafter. The incident was apparently reported to Ms. Corcoran by Ms. Joan Frenz a Vice-President, in a completely different Department, and a close personal friend of Ms Corcoran.

22. On August 27, 2003, Ms. Bailey's employment was terminated by Defendant on the grounds that on August 12, 2003 Ms. Bailey was involved in "inappropriate behavior exhibited toward a subordinate". The termination was effective "immediately". Ms. Bailey was not given any opportunity to address the matter or otherwise be heard in any way. There was no progressive discipline. The "inappropriate behavior" was the use of profanity in response to the inquiry made by the subordinate. A copy of Defendant's termination letter is attached hereto as Exhibit "C"

## V. Cause of Action

23. Ms. Bailey's charge of sexual harassment against Mr. Duncan in March 2003 was protected activity under the Act.

24. Defendant took adverse action against Ms. Bailey that was causally related to her sexual harassment charges, in that between March 2003, when she first notified Defendant that she had been sexually harassed in the workplace, and August 27, 2003, when Ms. Bailey's employment with Defendant was terminated, Defendant:

(a) forced Ms. Bailey to continue to work directly with Mr. Duncan for eight weeks after she made the charge;

(b) failed to keep the charge against Mr. Duncan confidential which resulted in others in the department learning of the charges, causing Ms. Bailey further fear and embarrassment;

(c) failed to keep Ms. Bailey apprised of the status of the investigation while forcing Ms. Bailey to continue working directly with Mr. Duncan;

(d) took an inordinate amount of time to investigate the charge while forcing Ms. Bailey to continue working directly with Mr. Duncan;

(e) failed to permit Ms. Bailey to respond in any way to untrue and unsubstantiated

accusations of misconduct made against her by Mr. Duncan in an effort to defend himself against Ms. Bailey's sexual harassment charge;

(f) accused Ms. Bailey of being unable to perform her duties as a supervisor based solely on untrue and unsubstantiated accusations of misconduct made by Mr. Duncan in an effort to defend himself against Ms. Bailey's sexual harassment charge, despite the fact that Ms. Bailey's formal performance evaluations indicated that she was highly proficient at her duties;

(g) excluded Ms. Bailey from meetings and other briefings on matters related to the department;

(h) relieved Ms. Bailey of duties she previously performed and excluded her from matters in which she was previously involved;

(i) forced Ms. Bailey to attend classes that others were not required to attend that were held hours away, and had little or nothing to do with her position with Defendant, while still requiring her to perform her normal job duties;

(j) overly scrutinized virtually all aspects of Ms. Bailey's work ranging from spelling to grammar to organizing social activities, using criteria not applied to other similarly situated employees;

(k) falsely accused Ms. Bailey of "engaging in social activities involving consumption of alcohol which were not sponsored by Commerce", when others who actually engaged in such conduct were not penalized, and when no mention was ever made that such activities were not permitted until after Ms. Bailey made the sexual harassment charge;

(l) embarrassed her in the presence of other employees, and sent her home to change clothing that Defendant considered inappropriate, which she had been permitted to wear before, and which

was similar to and probably more professional than clothing routinely worn by several other managers;

(m) embarrassed her by announcing in a staff meeting for the first time that she would no longer be supervising the five sales people in the department;

(n) terminated her employment for using profanity when others in the department, including the Director, and the Assistant Director, routinely used profanity in the same way;

(o) terminated her employment allegedly for using profanity without any form of progressive discipline or opportunity to respond to the charge;

(p) otherwise retaliated against Ms. Bailey.

25. Defendant's retaliatory actions toward Ms. Bailey violated her rights under the Act, entitling her to redress under the law.

WHEREFORE, Plaintiff, Kimberley A. Bailey, prays that the Court enter judgment in her favor and against Defendant, Commerce National Insurance Services, Inc, and award her damages including: front pay, back pay, compensatory damages, punitive damages, attorney's fees, costs, pre- and post judgment interest, and all such other and further damages and other relief permitted by law and otherwise that the Court deems just and proper.

LOSCO & MARCONI, P.A.

_____
Thomas C. Marconi, Esquire (#2761)
1813 N Franklin Street
P.O. Box 1677
Wilmington, DE 19899
(302) 656-7776
F(302)656-7774
tmarconi@delaw.org
Attorney for Plaintiff, Kimberley A. Bailey

Date: March 24, 2005