## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **KIMBERLEY A. BAILEY**<br><br>        **Plaintiff,**<br>vs.<br><br>**COMMERCE INSURANCE<br>SERVICES, INC.,**<br>a New Jersey corporation<br><br>        **Defendant.** | **Civil No. 05-CV-183 (SLR)**<br><br>**Civil Action** |

---

## DEFENDANT COMMERCE INSURANCE SERVICES, INC.'S RENEWED
## BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

POTTER ANDERSON & CORROON LLP
Wendy K. Voss (I.D.# 3142)
Sarah E. DiLuzio (I.D. # 4085)
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
wvoss@potteranderson.com
sdiluzio@potteranderson.com

BROWN & CONNERY, LLP
William M. Tambussi, Esq.
Susan M. Leming, Esq.
William F. Cook, Esq.
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
(856) 854-8900

Attorneys for Defendant
Commerce Insurance Services

Dated: June 16, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . iii

INTRODUCTORY STATEMENT . . . . . . . 1

NATURE AND STAGE OF PROCEEDINGS . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . 3

STATEMENT OF UNDISPUTED FACTS . . . . . . 4

ARGUMENT . . . . . . . . . 8

I.    Standard Governing Summary Judgment . . . . 8

II.   Defendant is Entitled to Summary Judgment Because
      Plaintiff Cannot Establish a Prima Facie Case Of
      Retaliation Under Title VII . . . . . . 9

      A.    Standard of Proof Under Title VII . . . . 9

      B.    Plaintiff Cannot Establish a Causal Relationship
            Between Any Adverse Employment Action She
            May Have Suffered and Her Alleged Protected
            Activity . . . . . . . . 10

III.  Defendant Had Legitimate Non-Discriminatory Reasons for
      Its Actions and Plaintiff Cannot Establish That Those
      Reasons are Pretextual . . . . . . 16

IV.   Plaintiff's Request for Punitive Damages Must Be Dismissed . 18

CONCLUSION . . . . . . . . . 20

## TABLE OF AUTHORITIES

### CASES

Anderson v. Consolidated Rail Corp. 297 F.3d 242 (3d Cir. 2002) . . 10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . 8

Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304 (6th Cir. 1989) 18

Brown v. Principi, 326 F.Supp.2d 1193 (D. Kan. 2004) . . . 17, 18

Carballo v. Log Cabin Smokehouse, 399 F.Supp.2d 715 (M.D. La. 2005) . 17

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . 8

Charlton v. Paramus Bd. of Educ., 25 F.3d 194 (3d Cir.),
cert. denied, 513 U.S. 1022 (1994) . . . . . . 9

Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) . . . . 9

E.E.O.C. v. L.B. Foster Co., 123 F.3d 746 (3d Cir. 1997) . . . 9

Evans v. Kansas City, Mo. School Dist., 65 F.3d 98 (8th Cir. 1995),
cert. denied, 517 U.S. 1104 (1996) . . . . . . 18

Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509
(3d Cir. 1992) . . . . . . . . . 16, 17

Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000) . 11

Fasold v. Justice, 409 F.3d 178, 185-86 (3d Cir. 2005) . . . 16

Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994) . . . . 10, 16

Gonzalez v. Beth Israel Medical Center, 262 F.Supp.2d 342
(S.D.N.Y. 2003) . . . . . . . . . 17

Hargrave v. County of Atlantic 262 F. Supp. 2d 393, 424-26 (D.N.J. 2003). 11

Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989),
cert. denied, 493 U.S. 1023 (1990) . . . . . . 9, 10

Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173 (3d Cir 1997) . . 9, 10, 11

Kolstad v. American Dental Assoc., 527 U.S. 526 (1999) . . . 19

Lampley v. Big Discount Food Store, Inc. 687 F.Supp. 211 (M.D.N.C. 1988) 10

Matsushita Electric Indus. Co., Ltd. v. Zenith Radio,
475 U.S. 574 (1986) . . . . . . . . 8

Muehlhausen v. Bath Iron Works, 811 F.Supp. 15 (D.Me. 1993) . 17

Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) . . 10

Shaner v. Synthes (USA), 204 F.3d 494, 501 (3d Cir. 2000) . . 10

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515-516 (1993) . 16

Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248
(1981), cert. denied, 510 U.S. 826 (1993) . . . . 17

Tzannetakis v. Seton Hall University, 344 F. Supp. 2d 438 (D.N.J. 2004) . 11

Underwood v. Sears, Roebuck and Co., 343 F.Supp.2d 259 (D. Del. 2004) . 19

Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir. 1986) . 11

Weathersby v. Secretary of Interior, 242 F. Supp. 2d 20 (D.D.C. 2003) . 9

Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001) . . . 9

Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989) . 8

Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997) . . 10

Zanders v. National R.R. Passenger Corp., 898 F.2d 1127
(6th Cir. 1990) . . . . . . . . 10

**STATUTES**

Age Discrimination in Employment Act, 29 U.S.C.A. § 623(a)(1) . 10

42 U.S.C. § 1981a(b) . . . . . . . 19

Title VII of the Civil Rights Act of 1964 ("Title VII")
and Civil Rights Act of 1991 42 U.S.C.A. §§ 2000e to 2000e-17 . . *passim*

42 U.S.C.A. § 2000e-3 . . . . . . . 9

42 U.S.C.A. § 2000e-3(a)    .    .    .    .    .    .    .    .    9

2 U.S.C.A. § 2000e-5 .    .    .    .    .    .    .    .    9

42 U.S.C.A. § 2000e-5(f)(1)    .    .    .    .    .    .    .    9

**RULES OF PROCEDURE**

Fed. R. Civ. P. 56    .    .    .    .    .    .    .    .    .    8

## INTRODUCTORY STATEMENT

This matter involves claims of retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Civil Rights Act of 1991 ("the Act").[1] Plaintiff, Kimberly Bailey (hereinafter referred to as "plaintiff"), a Sales and Service Supervisor for defendant Commerce Insurance Services, Inc., improperly pled as Commerce National Insurance Services, Inc. in the Complaint (hereinafter referred to as "defendant" or "CIS"), claims that she was unlawfully retaliated against for making a complaint of sexual harassment against her supervisor, Steve Duncan, in April 2003.[2]

Discovery ended in this case on March 31, 2006, and plaintiff's deposition has been completed.  At the close of discovery and in compliance with the Court's Scheduling Order, defendant now moves for summary judgment as to all of plaintiff's claims.

Defendant respectfully requests that this Court dismiss all claims against it as there are no genuine issues of material fact that would preclude summary judgment for the defendant at this time.  The uncontroverted facts adduced in discovery establish that plaintiff cannot state cognizable claims that the defendant violated her rights under Title VII or the Act.  In fact, plaintiff cannot demonstrate that the defendant violated her rights at all.

---

[1] Plaintiff filed an employment discrimination charge with both the Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor ("DOL") in November 2003.  When both agencies did not pursue action against CIS, plaintiff exercised her right to sue, filing the present complaint on March 24, 2005.

[2] Due to the revised scheduling order, and for the reasons below, Commerce submits the current brief in lieu of its submission on May 1, 2006.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff's Complaint was filed on March 24, 2005. Plaintiff's Complaint seeks compensatory and punitive damages for retaliation in violation of Title VII. In short, plaintiff contends she was retaliated against after she submitted a letter to the Human Resources Department of CIS alleging sexual harassment by Mr. Duncan, her supervisor. CIS denies plaintiff's claim in its entirety. Plaintiff was terminated on August 27, 2003 for legitimate business reasons that were not pretextual. There is nothing in the pleadings or discovery to establish any causal connection between plaintiff's submission of the letter and her termination.

The initial Scheduling Order was issued on May 24, 2006. On December 12, 2005, the Court issued a modified Scheduling Order. Under the Order of December 12, 2005, fact discovery was to be completed by February 1, 2006; additional interrogatories could be served by the parties; expert reports were due by January 30, 2006; rebuttal expert reports were due on March 1, 2006; and all expert depositions were due on March 31, 2006. The due date for dispositive motions was set for May 1, 2006. In compliance with the Order of December 12, 2005, defendant moved for summary judgment on all of plaintiff's claims.

Meanwhile, on May 4, 2006, the Court granted a motion by plaintiff to extend discovery until May 15, 2006. The Court reset the deadline for dispositive motions for June 16, 2006. To account for the additional discovery, and in light of the new motion deadline, Commerce respectfully submits this renewed motion for summary judgment.

## SUMMARY OF ARGUMENT

I.     Plaintiff cannot establish a <u>prima</u> <u>facie</u> case of retaliation nor pretext. There is no causal relationship between plaintiff's protected activity, <u>viz.</u> the submission of a letter alleging sexual harassment, and her termination.    At the time of her termination, plaintiff's supervisor had no knowledge of the protected activity.

II.     Defendant's basis for plaintiff's termination, inappropriate treatment of a subordinate by a supervisor, is legitimate and non-discriminatory.  Where plaintiff admits she engaged in the inappropriate conduct, plaintiff cannot establish pretext.  For these reasons, defendant is entitled to summary judgment on plaintiff's retaliation claim, and plaintiff's Complaint should be dismissed with prejudice.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff was employed at CIS from August 27, 2001 through August 27, 2003. A20, A94.[3]   Plaintiff was initially employed as a Core Customer Service Representative. A11, A94.  She worked at the CIS Core Division in Delaware.[4]  Complaint, ¶¶ 5, 6.  In 2001, the Core Division was expanded to create a "Main Street" Department, also in Delaware.  A18-19.  At that time, Steven Duncan was Director of the Main Street Department.  Ibid.   Per Duncan's recommendation, plaintiff was appointed as a Sales and Service Supervisor.  A13, 18.

Plaintiff supervised approximately ten (10) employees in her new position.  A19. Plaintiff understood that as a supervisor, she was expected to act with appropriate decorum and respect for those employees.  Ibid.  Plaintiff admitted that she was to "lead by example".  Ibid.  Plaintiff understood CIS had expectations of its employees in the workplace, including how employees should dress in the workplace.  Ibid.

In early April 2003, plaintiff submitted a letter to the Human Resources department of CIS alleging that her supervisor, Steve Duncan, acted inappropriately towards her.  A108-112.  Plaintiff's statement to defendant's Human Resources was prepared with the assistance of her present counsel.  A113-115.  Shortly thereafter, a meeting was arranged between plaintiff, CIS Human Resources Vice President Deborah Watson, and regional CIS supervisor of human resources, Bruce McKelvy.  Plaintiff thanked them for taking the time to meet with her.  Plaintiff said that she was "second

---

[3] Deposition transcripts and other pertinent documentary evidence are included in Defendant's Appendix to its Opening Brief in Support of its Motion for Summary Judgment, filed contemporaneously herewith, and referred to herein as "A__".

[4] "Core" refers to middle market commercial lines insurance, with premiums up to approximately $100,000. A11.

guessing my decision to report" Duncan, and she wished she "would have handled each situation differently now". A116-117.[5]

When plaintiff called CIS Human Resources during the investigation, Ms. Watson was responsive to the calls. A56. Ms. Watson gave plaintiff whatever information Ms. Watson could give regarding the investigation. A56.

In her deposition, plaintiff agreed that she had signed a CIS Code of Ethics Acknowledgement Form in which she agreed to "accept the principle that the welfare of the Bank depends upon the conduct and honesty of the employee". A77, 118-119. In spite of her signature, plaintiff acknowledged that she was not entirely honest with CIS during the investigation. A77.

At the conclusion of the investigation, CIS determined that both parties had exercised poor judgment and engaged in inappropriate behavior. CIS terminated Mr. Duncan. A59. CIS, in an effort to assist plaintiff with her future as a supervisor, asked plaintiff to complete various management courses offered internally by CIS. A120-23. These courses included: (1) Human Resource Management-1 Leadership in the Commerce Way; (2) Human Resource Management-3 Managing within the Law; (3) Core Skills for Building Commitment; and (4) Retaining Talent - The Leader's Role. A127-28.

CIS replaced Mr. Duncan with a new supervisor, Mary Corcoran. A63. Ms. Corcoran had no knowledge of the prior investigation. A48; 152-53. Plaintiff candidly

---

[5] Plaintiff later testified in her deposition that she lied in this email because she did not second-guess her decision to report. A60.

admitted at her deposition that she had no facts to establish that Ms. Corcoran had any knowledge of her complaint or the investigation. A49.

Even though plaintiff was counseled on the importance of attending the courses, she failed to attend a critical leadership course, "Leading People From All Walks of Life". A122-23. Plaintiff was scheduled to attend the course in July 2003. Ibid. Plaintiff did not report to CIS that she missed the class. Rather, CIS was informed via email from the course administrator. Ibid.

In addition, plaintiff was sent home by Ms. Corcoran for inappropriate dress. A141. Given plaintiff's position as a supervisor, it was essential for plaintiff to represent CIS in the most professional light possible. A130. At her deposition, plaintiff acknowledged that from the outset of her employment, she was aware that CIS had certain expectations for how employees should act and dress in the workplace, and that she understood such expectations. A19. Although plaintiff said she had worn similar attire on prior occasions, those occasions were before Ms. Corcoran came to plaintiff's department. A49. Plaintiff also acknowledged that she had no facts to show that being sent home for inappropriate dress was done in retaliation for plaintiff's complaint regarding Duncan. Ibid. [6]

In her deposition, plaintiff agreed she had no facts to support a claim that Corcoran was retaliating against her when Corcoran counseled plaintiff on her writing style in a particular email. A50. Plaintiff also said she had no facts to support a claim that Corcoran retaliated against plaintiff with a joke during a bowling outing. A52.

---

Plaintiff had no facts to support any retaliation by Corcoran against plaintiff in the form of comments at team meetings or outside plaintiff's work area. A53.

During her deposition, plaintiff acknowledged that CIS had made it clear from the outset of her employment that CIS wanted employees to work in a harmonious way with each other. A12. Similarly, plaintiff acknowledged that CIS had made its expectations known that people should show respect for each other in the workplace. Ibid. At her deposition, plaintiff also acknowledged that she had received and agreed to the CIS Code of Ethics, the CIS email policy, the CIS internet policy, and the CIS employee handbook. A77-78.

In mid-August 2003, a subordinate employee approached plaintiff for assistance in a matter. Contrary to the expectations that CIS had made clear to plaintiff, plaintiff angrily and inappropriately cursed at a subordinate, telling her, "I DON'T F—G HAVE TIME FOR THIS NOW." A143-44. At her deposition, plaintiff said that since CIS had not written down that "f-ing" was inappropriate, and since she personally felt it was appropriate, there was nothing wrong with it. A12. CIS terminated plaintiff for inappropriate conduct and violation of company policies. A20. Plaintiff's termination occurred on August 27, 2003. A146.[7]

---

[7] At her deposition, plaintiff had trouble recalling when she was terminated. A47.

7

## ARGUMENT

### I.  Standard Governing Summary Judgment

If the pleadings, depositions, and answers to interrogatories and admissions show that there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The essence of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

The opposing party must present facts which are substantial, i.e., real, having real existence, firmly established. A non-moving party must adduce more than a scintilla of evidence in its favor, and cannot simply assert or reassert factually unsupported allegations in its brief or pleading. Id. at 249; Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). A party opposing summary judgment must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Electric Indus. Co., Ltd. v. Zenith Radio, 475 U.S. 574, 586-87 (1986). In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." Id. at 586-87 (citations and footnotes omitted). As noted in Celotex, "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." Celotex, 477 U.S. at 323-24. And, as noted in Anderson, "If the evidence [submitted by a

8

party opposing summary judgment] is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50.

## II.    Defendant is Entitled to Summary Judgment Because Plaintiff Cannot Establish a Prima Facie Case Of Retaliation Under Title VII

### A.    Standard of Proof Under Title VII

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3(a); see generally Weathersby v. Secretary of Interior, 242 F. Supp.2d 20 (D.D.C. 2003) (describing dual components of § 2000e-3(a)). To remedy a violation of 42 U.S.C.A. § 2000e-3, § 2000e-5 requires a plaintiff to exhaust federal and state administrative avenues. See, e.g., Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) (describing procedures). If the administrative avenues are unsuccessful, the claimant may bring a civil action in federal court within ninety days after administrative dismissal. 42 U.S.C.A. § 2000e-5(f)(1).

For a retaliation claim under Title VII, a plaintiff must show (a) that the plaintiff engaged in protected activity; (b) that the employer took adverse action against the plaintiff; and (c) that a causal link exists between the protected activity and the employer's adverse action. Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001); E.E.O.C. v. L.B. Foster Co., 123 F.3d 746, 754 (3d Cir. 1997) (citing Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173 (3d Cir.1997)); Kachmar, 109 F.3d at 177 (citing Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 201 (3d Cir.), cert. denied, 513 U.S. 1022

9

(1994); <u>Jalil v. Avdel Corp.</u>, 873 F.2d 701, 708 (3d Cir. 1989), <u>cert. denied</u>, 493 U.S. 1023 (1990)). If plaintiff meets those three elements, the employer must show it had legitimate non-discriminatory reasons for the adverse action. <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 919-920, n. 2 (3d Cir. 1997). If defendant meets this burden, the presumption of discrimination drops from the case. <u>Woodson</u>, 109 F.3d at 919-920, n. 2 (citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994)). It is up to the plaintiff to show that defendant's proffered reasons for the adverse action are mere pretext. <u>Shaner v. Synthes (USA)</u>, 204 F.3d 494, 501 (3d Cir. 2000).[8]

> **B.    Plaintiff Cannot Establish a Causal Relationship Between Any Adverse Employment Action She May Have Suffered and Her Alleged Protected Activity**

Plaintiff cannot introduce evidence sufficient to satisfy the causation prong of the test for stating a <u>prima facie</u> claim of retaliation. In this regard, plaintiff can point to **no evidence whatsoever** to demonstrate that her filing a complaint against her supervisor, Steve Duncan, alleging sexual harassment was causally connected to assignment decisions made by her new manager, Mary Corcoran, or her termination. There is no evidence that Ms. Corcoran was ever even made aware of plaintiff's complaint against Mr. Duncan. Accordingly, plaintiff cannot establish a <u>prima facie</u> case of retaliation under Title VII.

---

[8] Courts have recognized that alternative methods of establishing retaliation exist other than the burden-shifting model. <u>See</u> <u>Anderson v. Consolidated Rail Corp.</u> 297 F.3d 242 (3d Cir. 2002) (discussing direct evidence model in context of the Age Discrimination in Employment Act, 29 U.S.C.A. § 623(a)(1)). However, the use of direct evidence in the area of retaliation is rare. <u>See, e.g.</u>, <u>Lampley v. Big Discount Food Store, Inc.</u> 687 F.Supp. 211 (M.D.N.C. 1988).

To determine whether there is a causal connection between protected activity and an adverse employment action, courts have given special attention to the temporal proximity between the two. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, (2001) (stating reliance on temporal proximity to show retaliation must be "very close" in time and citing cases saying 3 months is insufficient); see also Kachmar, supra, 109 F.3d at 177-78 (citing Zanders v. National R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir. 1990)); Jalil, 873 F.2d at 708. Timing alone, however, will not establish the necessary causal nexus. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302-04 (3d Cir. 1997). Courts have also considered whether there is an ongoing pattern of antagonism between the time of the protected activity and the time of the adverse employment action. Kachmar, 109 F.3d at 177-78. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific. Id. at 178.

The Third Circuit has not limited the ways in which causation may be shown. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000). For example, an employee could show causation through evidence that the employer offered inconsistent reasons for its adverse employment decision. Ibid. (citing Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir. 1986)). "Ultimately, the Court must conduct a case-by-case, fact-sensitive analysis to determine whether the 'proffered evidence, looked at as a whole, may suffice to raise the inference' of causation." Tzannetakis v. Seton Hall University, 344 F. Supp. 2d 438, 447 (D. N.J. 2004) (quoting Kachmar, 109 F.3d at 177); Hargrave v. County of Atlantic 262 F. Supp.2d 393, 424-26 (D. N.J. 2003).

In the instant case, there is no causation. Plaintiff alleges that she suffered adverse employment action as a result of her submission of the letter in April 2003.

11

However, the circumstances leading to plaintiff's termination occurred when plaintiff was supervised by Ms. Corcoran. Ms. Corcoran did not start working with plaintiff until after Mr. Duncan left Commerce. At her deposition, plaintiff unequivocally stated that she had no facts to show that Ms. Corcoran had any knowledge of plaintiff's letter regarding Mr. Duncan or the investigation.

> Q:    Okay. Do you have any facts as we sit here today to support any contention that Miss Corcoran knew anything about your written complaint to Commerce Human Resources?
>
> A:    Facts?
>
> Q:    Facts.
>
> A:    No.
>
> ***
>
> Q:    Okay. Do you have any facts as we sit here today to support any claim that Miss Corcoran knew anything about your written complaint to Human Resources on April 3, 2003?
>
> A:    I have no facts.

A48-49. Plaintiff has no evidence to create a genuine issue of material fact as to whether Ms. Corcoran had knowledge of the investigation. A49 (plaintiff admits she has no facts to support claim that violation of dress code was related to letter regarding Mr. Duncan); A63 (plaintiff admits she has no facts to support claim that she was removed from projects in retaliation for submitting letter); A65 (plaintiff admits she has no facts to support claim that her job duties were changed due to submission of letter); A69 (plaintiff admits she has no facts to support claim that she was more closely scrutinized by Corcoran than other employees).

The absence of a genuine issue of material fact on causation is further evidenced by the deposition testimony of Mary Corcoran. Ms. Corcoran testified, under oath, that she did not find out about plaintiff's allegations against Mr. Duncan until after plaintiff left Commerce. <u>See</u> A152-153. While plaintiff worked with Ms. Corcoran, Ms. Corcoran requested plaintiff to take certain classes. A152-153. Plaintiff did not take the classes. <u>Ibid.</u> **After plaintiff left**, Ms. Corcoran found out that plaintiff had already been signed up for those classes before Ms. Corcoran asked her to attend them. A153. This led Ms. Corcoran to raise the matter with Ms. Watson. <u>Ibid.</u> It was not until that juncture – <u>i.e.</u>, **after plaintiff left** - that Ms. Corcoran was made aware of plaintiff's allegations. As Ms. Corcoran described:

> And then I came to find out after the fact – after Kim left that she had already been signed up for certain classes and she never attended.
>
> And I said to Deb: Why wasn't I made aware of this? What did I walk into here? You know, why were you having - why did you and Kim have something going on and I wasn't aware of it? When I walked in to take over a brand new unit – which somebody would expect that I would sat down and briefed about what I was taking over. And that was never done. And I was angry.

A153. This testimony amply demonstrates that Ms. Corcoran was not aware of plaintiff's prior allegations against Mr. Duncan **until well after plaintiff's department from Commerce.**

Not only was Ms. Corcoran unaware of the prior allegations, but Ms. Corcoran independently determined that plaintiff needed to be terminated. Ms. Corcoran described numerous instances – plaintiff's cursing at team meetings, plaintiff's refusal to follow the dress code, plaintiff's refusal to take classes, plaintiff's inability to improve her emails,

and culminating with plaintiff's expletive-laden excoriation of an insubordinate in front of other employees – that led Ms. Corcoran to ask for plaintiff's termination. A161. The last incident made Ms. Corcoran believe "that there was a trend there that I couldn't train that behavior out of Kim – that that was just part of her." A160. So, Ms. Corcoran "made the decision that – against I felt that it was in the best interest of the department and that her staying on board would have been to the detriment of the department." A161. Ms. Corcoran further testified as follows:

> What Deb Watson – Deb Watson was the only person I spoke to in HR about it. And she said to me, "What do you want to do?"
>
> And I said, honestly, I think we need to terminate Kim. I don't believe that we can train these issues out of her. I don't believe – I didn't believe that she was committed. And that I felt that it was to the detriment of the department and we wouldn't be able to achieve our financial goals if she were to stay on board. And they supported the decision.

A162. Accordingly, without any knowledge about plaintiff's allegations, and in consideration of plaintiff's failure to improve her conduct as evidenced by the cursing incident, Ms. Corcoran reached the **independent conclusion** that plaintiff needed to be terminated.

The lack of any causal nexus is further evidenced by the deposition testimony of Ms. Watson, Vice-President of Human Resources for Commerce Insurance Services. Ms. Watson assisted in the investigation of plaintiff's allegations against Mr. Duncan. A175. However, Ms. Watson **never** disclosed that investigation to Mary Corcoran. Ms. Watson testified under oath as follows:

14

> Q:    Did you have any discussions with Mary Corcoran about the fact that Kim Bailey had filed a sexual harassment claim against Steve Duncan?
>
> A:    No.
>
> Q:    Never?
>
> A.    No.
>
> Q:    Do you know whether anyone at Commerce had such a discussion with Mary Corcoran?
>
> A:    To my knowledge no one did.
>
> Q:    Was any information about Kim's sexual harassment claim put in her personnel file?
>
> A:    No.
>
> Q:    Did you or anyone at Commerce ever have any discussions with Mary Corcoran about any concerns that they had about Kim?
>
> A:    I can only speak for myself. And I did not.

A173.  Ms. Watson testified that she specifically did not put anything about the investigation into plaintiff's personnel file. A218.  Ms. Watson also testified that it was Ms. Corcoran who pushed for termination. A227.  Ms. Watson stated:

> Q:    Mary was the one ultimately who made the decision, and you guys just said, "If that's what you want to do, Mary – it's your department – do it. We'll do it"?
>
> A:    Mary felt that what Kim had done had intimidated the workforce, and she said she had talked to employees who felt that way and that Mary was not going to be able to turn around MainStreet to the business level we wanted it to go to. It was my understanding successful [sic], but it needed to get to the next level. And she did not see how she was going to be able to rehabilitate Kim based on this latest action. And that's why she really wanted the termination.

15

Ms. Watson also stated:

> Q:    My question was: Did Mary ultimately make the final decision on what was going to happen to Kim?
>
> A:    It was Mary, Joe and I.
>
> Q:    Basically, you and Joe deferred to Mary, because you said that originally you didn't think that that was what ought to happen. She should be given a written warning.
>
> A:    We decided that Mary was convincing and that, yes, we would all agree to go to termination.

A224. This testimony shows that it was Ms. Corcoran who made the decision to terminate, and that Ms. Corcoran received the support of Ms. Watson and Mr. Morrissey.[9] Given that Ms. Corcoran had no prior knowledge of plaintiff's harassment allegations, the decision to terminate had no causal relationship to the allegations.

Based on the foregoing, plaintiff is unable to establish a causal nexus between her written complaint to Human Resources and Ms. Corcoran's request that plaintiff be terminated.

### III.    Defendant Had Legitimate Non-Discriminatory Reasons for Its Actions and Plaintiff Cannot Establish That Those Reasons are Pretextual

Even assuming, for purposes of this motion, that plaintiff satisfies her initial burden of proof, defendant is still entitled to summary judgment because it had legitimate non-discriminatory reasons for its actions which are not pretextual. In Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994), cited with approval, Fasold v. Justice, 409 F.3d 178, 185-86 (3d Cir. 2005), the Third Circuit observed that upon the employer's presentation of legitimate, non-discriminatory reasons for its behavior, it is plaintiff's obligation to show

---

[9] Mr. Morrissey worked with Ms. Watson in human resources.

16

"both that the reason was false, and that discrimination was the real reason." Fuentes, 32

F.3d at 763-64 (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515-516 (1993);

citing Hicks, 509 U.S. at 519-21). "[T]o defeat summary judgment when the defendant

answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its

action, the plaintiff must point to some evidence, direct or circumstantial, from which a

fact finder could reasonably either (1) disbelieve the employer's articulated legitimate

reasons; or (2) believe that an invidious discriminatory reason was more likely than not a

motivating or determinative cause of the employer's action[.]" Fuentes, 32 F.3d at 764

(citing Hicks, 509 U.S. at 510-11; Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d

509, 523 (3d Cir. 1992) (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S.

248, 256 (1981)), cert. denied, 510 U.S. 826 (1993)). In terms of how much evidence is

required, at the summary judgment stage, Chief Judge Becker explained:

> [T]o oppose the defendant's stated reasons for its actions to
> avoid summary judgment, the plaintiff's evidence rebutting
> the employer's proffered legitimate reasons must allow a
> factfinder reasonably to infer that each of the employer's
> proffered non-discriminatory reasons, . . ., was either a post
> hoc fabrication or otherwise did not actually motivate the
> employment action (that is, the proffered reason is a
> pretext).

> Fuentes, 32 F.3d at 764 (citations omitted).

Defendant had definitive, legitimate business reasons for terminating plaintiff's

employment. Commerce seeks to maintain the highest standards of conduct and

professionalism among its employees. A130. This is especially important for employees

in supervisory positions at Commerce. Ibid. Supervisors set the tone for the atmosphere

in the workplace and because supervisors are in a position to do what it takes to take

17

Commerce "to a higher level." Ibid. "Taking Commerce to a higher level" is one of Main Street's valued mottos. Plaintiff was aware of this approach. A50. Plaintiff's failure to abide by these basic notions of respect was encapsulated in the cursing incident with the subordinate. See, e.g. Gonzalez v. Beth Israel Medical Center, 262 F.Supp.2d 342, 357-58 (S.D.N.Y. 2003) (no retaliation where supervisor terminated employee for failure to abide by tardiness policy); Carballo v. Log Cabin Smokehouse, 399 F.Supp.2d 715, 724 (M.D. La. 2005) (employee's emotional outbursts and poor attitude a legitimate non-discriminatory reason for action); Muehlhausen v. Bath Iron Works, 811 F.Supp. 15, 17-20 (D.Me. 1993) (employer presented legitimate non-discriminatory reason where employee said "F--k you, a—h—" to a supervisor); Brown v. Principi, 326 F.Supp.2d 1193, 1200-01 (D. Kan. 2004) (finding that employer presented legitimate non-discriminatory reason where plaintiff referred to co-workers in derogatory manner, raising employer's concern that other employees would leave in light of such conduct). Where the reason for plaintiff's termination is legitimate, and where plaintiff readily admits she made the comment, plaintiff cannot show that the reason for termination was false or pretextual. A12.

At Commerce, supervisors are evaluated based on their special abilities to recognize common sense notions of fairness and decency and for their abilities to distinguish between professional and unprofessional acts in the workplace. A130; A148; A219. As a supervisor, Ms. Bailey was expected to consult these basic notions of leadership. Plaintiff herself testified that she was the type of person who led by example. A19. "An employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his

employer's goals." Evans v. Kansas City, Mo. School Dist., 65 F.3d 98 (8th Cir. 1995),

cert. denied, 517 U.S. 1104 (1996) (quoting Booker v. Brown & Williamson Tobacco

Co., 879 F.2d 1304, 1312 (6th Cir. 1989)). Other than plaintiff's unfounded conclusory

statements that she believes she was retaliated against, plaintiff is unable to prove that the

reasons for her termination were pretext, especially where plaintiff has no evidence that

Corcoran had knowledge of plaintiff's April 3, 2003 letter.

For all of these reasons, CIS had a legitimate non-discriminatory basis to

terminate plaintiff, and such action was not pretextual.

**IV.    Plaintiff's Request for Punitive Damages Must Be Dismissed**

In her Complaint, plaintiff seeks punitive damages. Complaint, at pp. 8-9. As

this Court has recognized, punitive damages in Title VII cases are limited "to cases in

which the employer has engaged in intentional discrimination and has done so with

'malice or with reckless indifference to the federally protected rights of an aggrieved

individual.'" Underwood v. Sears, Roebuck and Co., 343 F.Supp.2d 259, 271 (D. Del.

2004) (Robinson, J.) (quoting Kolstad v. American Dental Assoc., 527 U.S. 526, 529-30

(1999) (quoting 42 U.S.C. § 1981a(b))). An employer cannot be liable for the

discriminatory actions of it employees, even managers, "where these decisions are

contrary to the employer's 'good faith efforts to comply with Title VII.'" Underwood,

343 F.Supp.2d at 271 (quoting Kolstad, 527 U.S. at 545). Punitive damages are not

appropriate in this case because there is no evidence that CIS maliciously or recklessly

was indifferent to plaintiff's federal rights. CIS responded to plaintiff's letter by

conducting an extensive investigation and terminating Mr. Duncan. Furthermore, CIS

had a legitimate basis to terminate plaintiff that was not pretextual. Absent any evidence of malice or recklessness, the request for punitive damages should be dismissed.

## CONCLUSION

For all the forgoing reasons, it is hereby respectfully requested that this Court enter an Order granting defendant's Motion for Summary Judgment and dismissing plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: _Sarah E. DiLuzio_

Wendy K. Voss (I.D.# 3142)
Sarah E. DiLuzio (I.D. # 4085)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
wvoss@potteranderson.com
sdiluzio@potteranderson.com

Of Counsel:

William M. Tambussi, Esq.
Susan M. Leming, Esq.
William F. Cook, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
(856) 854-8900

*Attorneys for Defendant*
*Commerce Insurance Services, Inc.*

DATED:    June 16, 2006

737204v2

20

## CERTIFICATE OF SERVICE

I, Sarah E. Diluzio, hereby certify that on June 16, 2006, I served two copies of the foregoing DEFENDANT COMMERCE INSURANCE SERVICES, INC.'S RENEWED BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT upon the following counsel of record in the manner indicated:

BY HAND DELIVERY

Thomas C. Marconi, Esquire
Losco & Marconi, P.A.
1813 N. Franklin Street
P.O. Box 1677
Wilmington, DE 19899

Sarah E. DiLuzio (DSB ID No. 4085)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Post Office Box 951
Wilmington, Delaware  19899-0951
Tel:  (302) 984-6000
E-mail:  sdiluzio@potteranderson.com

737204v2