## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **KIMBERLEY A. BAILEY**<br><br>　　　　**Plaintiff,**<br>　　**vs.**<br><br>**COMMERCE INSURANCE SERVICES, INC.,**<br>**a New Jersey corporation**<br><br>　　　　**Defendant.** | **Civil No. 05-CV-183 (SLR)**<br><br>**Civil Action** |

---

## DEFENDANT COMMERCE INSURANCE SERVICES, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

POTTER ANDERSON & CORROON LLP
Wendy K. Voss (I.D.# 3142)
Sarah E. DiLuzio (I.D. # 4085)
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
wvoss@potteranderson.com
sdiluzio@potteranderson.com

BROWN & CONNERY, LLP
William M. Tambussi, Esq.
Susan M. Leming, Esq.
William F. Cook, Esq.
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
(856) 854-8900

Attorneys for Defendant
Commerce Insurance Services

Dated: July 10, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .    .    .    .    .    .    .    .    ii

INTRODUCTORY STATEMENT .    .    .    .    .    .    .    1

NATURE AND STAGE OF PROCEEDINGS .    .    .    .    2

SUMMARY OF ARGUMENT .    .    .    .    .    .    .    3

REPLY STATEMENT OF FACTS .    ..    .    .    .    .    .    4

ARGUMENT .    .    .    .    .    .    .    .    .    .    9

    I.    **Plaintiff's Opposition to the Summary Judgment Motion**
        **is Defective as a Matter of Law** .    .    .    .    .    9

    II.    **Plaintiff Fails to Present Any Evidence That Mary Corcoran**
        **Had Knowledge of the Protected Activity** .    .    .    .    10

    III.    **Plaintiff's Remaining Arguments Do Not Involve Adverse**
        **Employment Action** .    .    .    .    .    .    .    11

    IV.    **Commerce Had A Legitimate Non-Discriminatory Basis**
        **for the Termination** .    .    .    .    .    .    .    14

    V.    **Plaintiff Is Not Entitled to Punitive Damages** .    .    .    15

CONCLUSION .    .    .    .    .    .    .    .    .    .    16

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)     .     .     .     .     9

Bhatla v. U.S. Capital Corp., 990 F.2d 780 (3d Cir.1993)     .     .     .     .     9

Brown v. Principi, 326 F.Supp.2d 1193* (D. Kan. 2004)     .     .     .     .     14

Burlington Northern and Santa Fe Ry. Co. v. White, No. 05-259, 2006 WL
1698953 (U.S. June 22, 2006)     .     .     .     .     .     .     .     .     11, 12, 13

Carballo v. Log Cabin Smokehouse, 399 F.Supp.2d 715 (M.D. La. 2005)     .     .     14

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)     .     .     .     .     .     9

Childers v. Joseph, 842 F.2d 689 (3d Cir. 1988)     .     .     .     .     .     9

Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003)     .     .     .     .     9, 14

GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189 (3d Cir. 2001) .     .     .     9, 14

Gonzalez v. Beth Israel Medical Center, 262 F.Supp.2d 342
(S.D.N.Y. 2003)     .     .     .     .     .     .     .     .     14

Muehlhausen v. Bath Iron Works, 811 F.Supp. 15 (D.Me. 1993)     .     .     .     14

Port Authority of New York and New Jersey v. Affiliated
FM Ins. Co., 311 F.3d 226 (3d Cir. 2002)     .     .     .     .     .     .     9, 10

Quiroga v. Hasbro, Inc., 934 F.2d 497 (3d Cir. 1991)     .     .     .     .     9

Rochon v. Gonzales, 438 F.3d 1211* (D.C. Cir. 2006)     .     .     .     .     11

Washington v. Illinois Dept. of Revenue, 420 F.3d 658 (7th Cir. 2005)     .     .     11

Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989) .     .     .     9

### STATUTES

Title VII of the Civil Rights Act of 1964 ("Title VII")
and Civil Rights Act of 1991  42 U.S.C.A. §§ 2000e to 2000e-17     .     .     .     1, 3

42 U.S.C.A. § 2000e-3(a)     .     .     .     .     .     .     .     .     12

**OTHER AUTHORITIES**

1 B. Lindemann & P. Grossman, <u>Employment Discrimination Law</u>
669 (3d ed. 1996)    .    .    .    .    .    .    .    .    .    .    .    12

## INTRODUCTORY STATEMENT

In her opposition brief, plaintiff contends that there are genuine issues of material fact as to whether she satisfies the elements of a retaliation claim under Title VII of the Civil Rights Act of 1964 ("Title VII").  Plaintiff further contends that the legitimate non-discriminatory reasons offered by defendant, Commerce Insurance Services, Inc. (hereinafter referred to as "defendant", "Commerce", or "CIS") are pretextual.  Plaintiff's arguments are without merit.  No reasonable jury could find that there is a prima facie case of retaliation, or that CIS acted with pretext. Accordingly, CIS respectfully requests summary judgment on plaintiff's claims.

## NATURE AND STAGE OF PROCEEDINGS

In compliance with the Court's Order of December 12, 2005, defendant moved for summary judgment on all of plaintiff's claims on May 1, 2006. On May 4, 2006, the Court reset the deadline for dispositive motions for June 16, 2006 to account for limited depositions by plaintiff. In light of the additional discovery, Commerce submitted a renewed motion for summary judgment on June 16, 2006. Plaintiff filed an opposition on June 30, 2006. This brief is respectfully submitted in reply to plaintiff's opposition and in further support of defendant's motion.

## SUMMARY OF ARGUMENT

I.      Plaintiff fails to make an adequate factual presentation for a summary judgment motion.

II.     Plaintiff fails to show that she satisfies the prima facie elements of a claim under Title VII, or that Commerce's reason for terminating plaintiff was pretextual.

## REPLY STATEMENT OF FACTS

Commerce relies upon and incorporates the statement of facts contained in its brief of June 16, 2006. In response to the statement of facts in plaintiff's brief, Commerce is compelled to set the record straight.

At the center of plaintiff's lawsuit is the letter plaintiff sent to Commerce on April 3, 2003. Plaintiff admitted, under oath, that she purposely withheld information in the letter. A53.[1] Even worse, plaintiff admitted, under oath, that it was not her intention to be complete and truthful in the letter. A58.[2] Plaintiff makes no attempt to reconcile these discrepancies. This testimony is only the beginning in terms of plaintiff's lack of candor during the investigation.

---

[1]    Q:    Did you tell Mr. McKelvy and Miss Watson all there was to know about your complaint regarding Mr. Duncan?

  A:    No.

  Q:    You withheld information by your own choice?

  A:    Yes.

A53, Plaintiff's Deposition.

[2]    Q:    When you sent [the memorandum] to Commerce did you intend it to be complete and truthful in all respects?

  A:    Was it my intention to be complete and truthful?

  Q:    Yes.

  A:    No. They asked me what my expectations were. I was not trying to make any waves in my pond and I was trying to be politically correct in a professional manner.

A58, Plaintiff's Deposition.

Plaintiff did not tell Commerce that she lied in her letter about the evening in Randolph, New Jersey on November 26, 2002. In her brief, which parrots her April 3, 2003 complaint, plaintiff describes the event as follows:

> Plaintiff requested that Mr. Duncan take her back to her hotel room. Rather than comply with this request, Mr. Duncan left plaintiff at the restaurant insisting that she stay with the other person and develop a "relationship". The implication was that she should have sex with this individual for the sake of the Department [B 11-14]. This made Plaintiff very uncomfortable. She confided with the other person that she felt like a "sold piece of meat" and that she was embarrassed by what Mr. Duncan had done. The other person drove Plaintiff back to her hotel room.

Pl. Opp. Br., at 10. This differs radically from plaintiff's testimony at her deposition. Plaintiff testified that she stayed another hour at the bar with the man, Paul Scaffidi, after which they decided to leave the bar together. A42. Instead of simply being dropped off at the hotel, plaintiff testified:

Q:    All right. So you then get in the car with Mr. Scaffidi?

A:    Yes.

Q:    And what did you say happened?

A:    We got back to the hotel and he sat there. I'm like, "I'm going to go in." He's like, "Oh, no. Let's talk a little bit more. He started kissing on me.

Q:    In the hotel?

A:    No. In the car. We did not go into the hotel.

Q:    When you say he started kissing on you, what does that mean?

A:    He was kissing my neck and kissing me on my face and started kissing.

Q:    What were you doing?

5

A:    I kissed him back.

Q:    Okay. Then what happened?

A:    We stayed in the car for probably 20 minutes I would say. I don't recall exactly the time. And then I said, "I've got to get some sleep, I have to go."

A42.  Subsequently, plaintiff dated Scaffidi for a while.  Ibid.[3]  During that time, she had

consensual sex with him twice.  A42.  Plaintiff drove from her house in Delaware to Cranbury,

New Jersey for those two occasions.  A42.  Plaintiff neglected to mention these details in her

complaint to Commerce on April 3, 2003, nor are such details mentioned in her brief.  See Pl.

Opp. Br., at 10.[4]

    Plaintiff failed to disclose other details during the Commerce investigation as well.

Plaintiff testified at her deposition that just prior to the Randolph trip in November 2002,

plaintiff and Duncan were working on a professional biography of plaintiff that would be

available to clients.  See A39-40; A228.  Duncan emailed plaintiff to see if her biography was

okay.  A39-40.  Plaintiff responded to Duncan by saying that he did not mention anything about

"long walks on the beach or bubble baths".  A49-40; A228.  Plaintiff also said that Duncan

should have added that she was "soon to be single and looking for Daddy Warbucks", and that

she was "the WOW of MainStreet".  A39-40; A228.  Plaintiff further said "good job stevie".

---

[3] In her brief, plaintiff only states that Scaffidi drove her back to her hotel room.  Pl. Opp. Br., at 10.

[4] Plaintiff later recharacterized Duncan's inappropriateness at the Randolph meeting as an attempt to get plaintiff to have an affair with a married man.  A42.  However, plaintiff said she had relations with Scaffidi before she knew he was married.  Ibid.  Thus, plaintiff is inconsistent as to how Duncan could have made plaintiff aware that Scaffidi was married in Randolph if she did not have relations with him until after Randolph.

A228. At her deposition, plaintiff admitted that her email was in violation of company policy. A40.

This was not the only time that plaintiff openly discussed her personal life with Duncan. In October 2002, plaintiff forwarded to Duncan an email she received from another man who was not a CIS employee. See A37; A229. The man asked plaintiff to join him in a hotel room during an upcoming school board convention in Atlantic City.[5] The email stated that plaintiff would be "afforded the luxury of total relaxation", with "dining and nightly invitations to the most elegant 'after dinner' receptions thrown by some of the largest business firms in NJ." A229. Plaintiff would be "pampered, cuddled, coddled, waited on and waited for", with options including "moon lit walks, hand in hand, on the beach and boardwalk" as well as "napping together through the late afternoon", where the man and plaintiff could "do as much or as little as [plaintiff] wish[ed] to experience". A37; A229.

Plaintiff found this flattering. A37. In her message with the forwarded email, plaintiff joked with Duncan and asked, "Can a girl get some time off . . ." A37; A229. Plaintiff said that it was "a damn shame" because "I'm not at all interested in him." A229. She added how "I need to get this guy to give Scott some lessons", referring to the business acquaintance that plaintiff and Duncan socialized with in June 2002. Ibid. Plaintiff did not ask Duncan to take any kind of action against the person who sent her the email, nor did she suggest in any way that it was inappropriate.[6] Plaintiff does not mention any of this in her April 3, 2003 letter.

---

[5] The original email had been sent to plaintiff on her email account at CIS. A229.

[6] During her deposition, plaintiff acknowledged that CIS had a policy against the use of the phone or the internet for a non-business purpose. A12. In fact, plaintiff acknowledged that this was "standard policy". A12. Plaintiff was aware of this at the outset of her employment. A12.

7

The discovery in this case also shows that plaintiff was untruthful during the investigative process after she submitted her letter. Before an interview on April 15, 2003, plaintiff sent a memorandum to CIS human resources representative Deborah Watson stating that she did not want to have Duncan terminated, but only a professional apology. A231. At her deposition, plaintiff admitted that she was untruthful in the memorandum. A58. Plaintiff testified at her deposition that it was her intention to have Duncan terminated. A58. Plaintiff would not characterize her statement as a lie, but a "mis-truth". A64.

It is significant to note that after her interview with Watson and Bruce McKelvy on April 15, 2003, plaintiff thanked them for taking the time to meet with her. A116. Plaintiff said that she was "second guessing my decision to report" Duncan, and she wished she "would have handled each situation differently now". A116.[7] In addition, plaintiff testified at her deposition that Ms. Watson was responsive to plaintiff's calls during the investigation. A56. In fact, Ms. Watson gave plaintiff whatever information Ms. Watson could give regarding the investigation. Ibid.

Plaintiff's remaining factual contentions consist of bare allegations and conclusory statements.[8] With respect to those contentions, Commerce relies upon and incorporates the statement of facts contained in its moving brief.

---

[7] Plaintiff later testified in her deposition that she lied in this email because she did not second-guess her decision to report. A60.

[8] For example, plaintiff conclusorily states, "It is also clear that Plaintiff's termination had little to do with the August 12, 2003 incident." There is no citation to anything in the record for this proposition. Plaintiff further states, "In reality Plaintiff was terminated in retaliation for making her charge of sexual harassment against Duncan four months earlier." There is no factual basis that is provided for this claim.

## ARGUMENT

**I.** **Plaintiff's Opposition to the Summary Judgment Motion is Defective as a Matter of Law**

It is well-settled that a non-moving party in a summary judgment motion cannot simply assert or reassert factually unsupported allegations in its brief or pleading. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-52 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). The non-movant may not "rest upon mere allegations, general denials, or . . . vague statements." Port Authority of New York and New Jersey v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Rather, the non-moving party "must rely on affidavits, depositions, answers to interrogatories, or admissions on file." GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 199 (3d Cir. 2001) (citing Bhatla v. U.S. Capital Corp., 990 F.2d 780, 787 (3d Cir.1993)). The non-moving party "must present affirmative evidence – whether direct or circumstantial – to defeat summary judgment, and may not rely simply on the assertion that a reasonable jury could discredit the opponent's account." Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003) (citing Williams, supra, 891 F.2d at 460-61). The non-moving party "**is obligated** 'to identify those facts of record which would contradict the facts identified by the movant.'" Port Authority of New York and New Jersey, 311 F.3d at 233 (quoting Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988)) (emphasis added).

Plaintiff's opposition to the summary judgment motion fails to satisfy these standards. Plaintiff fails to make a single citation to the factual record in the argument section of her brief. See Pl. Opp. Br., at 25-31. No effort is made to cite a deposition transcript, an answer to an

9

interrogatory, an admission, or an affidavit. Without any such direction to the record, plaintiff's statements are at best conclusory. Such generalized assertions do not create issues of material fact to defeat a motion for summary judgment. Accordingly, the motion for summary judgment should be granted.

## II.    **Plaintiff Fails to Present Any Evidence That Mary Corcoran Had Knowledge of the Protected Activity**

Plaintiff fails to demonstrate that Mary Corcoran, the decision-maker for Ms. Bailey's termination, had any knowledge of plaintiff's sexual harassment complaint when Corcoran terminated plaintiff. Plaintiff fails to address her own deposition testimony and that of Corcoran.[9] See Def.'s Moving Br., at 11-15. Plaintiff testified that **she had no facts** showing that Corcoran had any knowledge of the complaint. A48-49. Plaintiff ignores Corcoran's testimony that Corcoran did not find out about the complaint against Duncan until **after plaintiff left the company.** A153.

Plaintiff cannot circumvent such direct testimony by making the bare suggestion that there is circumstantial evidence. Port Authority of New York and New Jersey, 311 F.3d at 233. See Pl. Opp. Br., at 26. Without any citation to the record – which is required in an opposition to a summary judgment motion – plaintiff casually asserts that since Ms. Watson, Mr. McKelvy, and Mr. Morrissey "were aware of or directly involved in the 'investigation' of Plaintiff's charge," Corcoran – who was affirmatively sealed from the investigation – must have known as well.[10] Plaintiff fails to produce **any** evidence to dispute that Mary Corcoran was responsible for

---

[9] Plaintiff is required to address these discrepancies. Port Authority of New York and New Jersey, 311 F.3d at 233 (requiring non-moving party to identify specific facts that contradict the facts presented by the movant).

[10] Ms. Watson testified that she never discussed plaintiff's complaint with anyone. Def.'s Moving Br., at 14-15 (citing A173).

10

the final decision on termination.[11]  At this stage, plaintiff's vague reference to "circumstantial evidence" is nothing but a desperate attempt to manufacture a factual dispute where none exists. Simply stated, plaintiff presents **no evidence** to dispute that Ms. Corcoran made the ultimate decision on plaintiff's termination.  Def.'s Moving Br., at 15 (citing A224).  Accordingly, plaintiff fails to make a prima facie case of retaliation.

## III.    Plaintiff's Remaining Arguments Do Not Involve Adverse Employment Action

Plaintiff makes a series of other claims suggesting that she suffered adverse employment action after she submitted her complaint.  Specifically, plaintiff alleges that she suffered adverse employment action when: (1) she continued to work with Duncan after her complaint; (2) she was "unjustly criticized" when making travel arrangements; and (3) she attended the June 3, 2003 meeting to discuss Commerce's findings from the investigation.  See Pl. Opp. Br., at 26-28. None of these are adverse employment actions as understood in this legal context.

The United States Supreme Court has recently noted that Title VII does not protect an individual from all retaliation.  Burlington Northern and Santa Fe Ry. Co. v. White, No. 05-259, 2006 WL 1698953, at * 10 (U.S. June 22, 2006), attached hereto as Exhibit A.  Rather, Title VII protects an individual from "retaliation that produces an injury or harm."  Ibid.  Such injury or harm exists only where "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Ibid. (quoting Washington v. Illinois Dept. of Revenue, 420 F.3d 658, 662 (7th Cir. 2005); Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted).

---

[11] In her brief, plaintiff completely glosses over Mary Corcoran.  Pl. Opp. Br., at 26-27.

It is unreasonable for plaintiff to suggest that her continued employment in Main Street was materially adverse. Plaintiff states that "it was difficult for her to do so." Pl. Opp. Br., at 26. However, as the Supreme Court specifically noted in <u>Burlington Northern</u>, "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." <u>Burlington Northern</u>, 2006 WL 1698953, at * 10 (citing 1 B. Lindemann & P. Grossman, <u>Employment Discrimination Law</u> 669 (3d ed. 1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under 42 U.S.C.A. § 2000e-3(a)). It is unreasonable for plaintiff to believe that the submission of her complaint would not create some awkward moments in the workplace with Duncan. Such awkward moments does not rise to the level of "employer interference with 'unfettered access' to Title VII's remedial mechanisms." <u>Burlington Northern</u>, 2006 WL 1698953, at * 10.

Plaintiff's position is also undermined by an email she wrote on May 15, 2003 in which she stated, ""I do appreciate each & every one of you. I could not imagine being any where but MainStreet." B18. This email, which was sent not only to Main Street staff but to Duncan and Watson, was written after she made her complaint. Plaintiff further wrote, "YOU ARE ALL THE BEST". B18. This evidence destroys any claim that plaintiff's ability to pursue her complaint was inhibited in the workplace, or that she suffered any injury or harm as a result of this alleged adverse action.[12]

---

[12] Furthermore, plaintiff contradictorily cites the May 15, 2003 email in support of her claim that "The people on Plaintiff's team while she worked for Defendant were like family." Pl. Opp. Br., at 4 (citing B18). As noted, the May 15, 2003 email was sent to Duncan and Watson.

For these same reasons, plaintiff fails to show that "unjust" criticism following her efforts to make travel arrangements to a business function is adverse employment action. See Pl. Opp. Br., at 16, 26; A226-227. Plaintiff's personal feeling that the criticism was unjust is a prime example of a petty slight or minor annoyance that often takes place at work. Burlington Northern, 2006 WL 1698953, at * 10. Such criticism was not "employer interference with 'unfettered access' to Title VII's remedial mechanisms." Ibid. Moreover, the May 15, 2003 email to Watson and others was written in direct response to her email concerning travel arrangements to the business function. See A226-227.

Finally, plaintiff's claim that the June 3, 2003 meeting was adverse is without merit. Plaintiff cites no case law that holds that a meeting constitutes adverse employment action. Plaintiff makes the completely unsubstantiated assertion that at the June 3, 2003 meeting, "Defendant refused to discuss" either the sexual harassment charge or the plan for Mr. Duncan. Plaintiff testified at her deposition that she was told at the meeting that Duncan was terminated. A87. Plaintiff's own Complaint alleges that she was given information about the status of the investigation in June 2003. A87; B4. Moreover, plaintiff testified that she was not completely excluded from the investigation. A62. She suggests that she did not receive information about the outcome of the investigation, but this is undermined by her later testimony. A87. Plaintiff further testified that Commerce returned her phone calls and emails. A62. In short, plaintiff has no legal or factual basis to conclude that the June 3, 2003 meeting – which was specifically held to discuss plaintiff's complaint – was adverse to her.

For these reasons, plaintiff's additional arguments on adverse employment action are without merit.

13

**IV.    Commerce Had A Legitimate Non-Discriminatory Basis for the Termination**

Plaintiff's argument with respect to Commerce's reason for terminating plaintiff is critically defective. In defeating a motion for summary judgment, plaintiff "must rely on affidavits, depositions, answers to interrogatories, or admissions on file." GFL Advantage Fund, supra, 272 F.3d at 199. Furthermore, plaintiff "may not rely simply on the assertion that a reasonable jury could discredit the opponent's account." Estate of Smith v. Marasco, supra, 318 F.3d at 514. Plaintiff's argument with respect to Commerce's proffered reason for the termination – the improper harassment of a subordinate – is simply that she contends the jury will not believe Commerce. Pl. Opp. Br., at 30. Plaintiff only states what she contends. Plaintiff says nothing about the evidence. Furthermore, plaintiff makes no effort to distinguish the cases cited by Commerce concerning the kind of conduct exhibited by plaintiff. See Gonzalez v. Beth Israel Medical Center, 262 F.Supp.2d 342, 357-58 (S.D.N.Y. 2003) (no retaliation where supervisor terminated employee for failure to abide by tardiness policy); Carballo v. Log Cabin Smokehouse, 399 F.Supp.2d 715, 724 (M.D. La. 2005) (employee's emotional outbursts and poor attitude a legitimate non-discriminatory reason for action); Muehlhausen v. Bath Iron Works, 811 F.Supp. 15, 17-20 (D.Me. 1993) (employer presented legitimate non-discriminatory reason where employee said "F--k you, a—h—" to a supervisor); Brown v. Principi, 326 F.Supp.2d 1193, 1200-01 (D. Kan. 2004) (finding that employer presented legitimate non-discriminatory reason where plaintiff referred to co-workers in derogatory manner, raising employer's concern that other employees would leave in light of such conduct).

There can be no question that plaintiff's conduct towards her subordinate easily failed any standard of professional conduct for a supervisor. Darlene Wilkins, who worked under

plaintiff at Main Street, testified that plaintiff came around from plaintiff's work station, confronted Valerie Oakes at her station, and screamed at her.  A234.  To Ms. Wilkins, this conduct was so outrageous that it took Ms. Wilkins "a few hours" to calm down after she witnessed it.  <u>Ibid.</u>  Ms. Wilkins had never seen anything like it happen before at the office.  <u>Ibid.</u> Ms. Wilkins was afraid to report the incident because if she did, she may have lost her self-control with plaintiff to the point where she might have lost her job.  <u>Ibid.</u>  Ms. Oakes was so embarrassed by plaintiff's conduct that she had to leave the office and cry outside.  A235.  Mary Corcoran articulated very clearly why she had to move to termination in such circumstances. A160-162.

Accordingly, plaintiff's argument on Commerce's basis for the termination fails as a matter of law and should be rejected.

## V.     <u>Plaintiff Is Not Entitled to Punitive Damages</u>

Plaintiff's argument on punitive damages fails for the same reasons as her argument on legitimate non-discriminator reasons.  <u>See</u> Pl. Opp. Br., at 31.  Plaintiff only states that she believes punitive damages are appropriate.  There is no analysis as to what conduct by defendant allegedly constitutes punitive damages, nor is there any case law supporting her analysis. Without any evidence that Corcoran knew about plaintiff's complaint at the time of plaintiff's termination, plaintiff has no evidence that Corcoran acted with malice in response to the complaint.  Thus, plaintiff's claim for punitive damages should be rejected.

## CONCLUSION

For all the forgoing reasons, it is hereby respectfully requested that this Court enter an Order granting defendant's Motion for Summary Judgment and dismissing plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,


POTTER ANDERSON & CORROON LLP

Of Counsel:

By: /s/ Sarah E. DiLuzio

      Wendy K. Voss (I.D.# 3142)

William M. Tambussi, Esq.      Sarah E. DiLuzio (I.D. # 4085)
Susan M. Leming, Esq.      Hercules Plaza, 6th Floor
William F. Cook, Esq.      1313 N. Market Street
BROWN & CONNERY, LLP      Wilmington, DE  19801
360 Haddon Avenue      Telephone (302) 984-6000
P.O. Box 539      wvoss@potteranderson.com
Westmont, NJ 08108      sdiluzio@potteranderson.com
(856) 854-8900

*Attorneys for Defendant*
*Commerce Insurance Services, Inc.*


DATED:      July 10, 2006

16

## <u>CERTIFICATE OF SERVICE</u>

I, Sarah E. Diluzio, hereby certify that on July 10, 2006, I served two copies of the foregoing DEFENDANT COMMERCE INSURANCE SERVICES, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT upon the following counsel of record in the manner indicated:

<u>BY HAND DELIVERY</u>

Thomas C. Marconi, Esquire
Losco & Marconi, P.A.
1813 N. Franklin Street
P.O. Box 1677
Wilmington, DE 19899

/s/ Sarah E. DiLuzio
Sarah E. DiLuzio (DSB ID No. 4085)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Post Office Box 951
Wilmington, Delaware  19899-0951
Tel:  (302) 984-6000
E-mail:  sdiluzio@potteranderson.com

730260