**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 07-1777

KIMBERLEY A. BAILEY,

Appellant

v.

COMMERCE NATIONAL INSURANCE SERVICES, INC.,
A NEW JERSEY CORPORATION

On Appeal from the United States District Court
for the District of Delaware
Civil No. 05-CV-00183
District Judge: The Honorable Sue L. Robinson

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 15, 2008

Before: SLOVITER, and SMITH, *Circuit Judges*,
DIAMOND, *District Judge*[*]

(Filed: February 29, 2008)

OPINION

---

[*]The Honorable Gustave Diamond, Senior District Judge for the United States District Court for the Western District of Pennsylvania, sitting by designation.

1

DIAMOND, *District Judge*.

Appellant Kimberley A. Bailey ("Bailey") is a former employee of Commerce National Insurance Services, Inc. ("Commerce"). Bailey claims that the termination of her employment by Commerce was motivated by retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. The District Court granted Commerce's motion for summary judgment. We will affirm.

## I.

As we write primarily for the parties, we will discuss only those facts relevant to our analysis. Bailey began her employment with Commerce on August 27, 2001, as a customer service representative in Delaware. Bailey later was promoted to the position of sales and service supervisor of Commerce's Main Street Department ("the Department"), also located in Delaware. At that time, Steven Duncan, who was director of the Department, was Bailey's supervisor.

On April 3, 2003, Bailey submitted a letter to Commerce's Human Resources Department alleging that Duncan had sexually harassed her (the "internal complaint"). Bailey subsequently met with Deborah Watson, who was Commerce's Vice President of Human Resources, and Bruce McKelvy, another official in the Human Resources Department, to discuss the situation. Commerce then conducted an investigation of Bailey's allegation against Duncan. At the conclusion of the investigation, Commerce determined that Duncan had not sexually harassed Bailey, but he had acted

inappropriately. As a result, Commerce terminated Duncan. However, through the investigation, Commerce found that Bailey had engaged in certain unprofessional conduct that it thought she should correct in light of her position as a supervisor. Accordingly, Commerce requested that Bailey complete various in-house training courses.

Duncan was replaced as director of the Department by Mary Corcoran, who transferred to the Department from another office. When Corcoran took over as director of the Department, she was not aware of Bailey's internal complaint or the ensuing investigation. In fact, Corcoran did not learn of Bailey's internal complaint until *after* she was terminated. This was because Corcoran did not have any files relating to the internal complaint or the investigation in her Delaware office, and the Commerce Human Resources Department, which had conducted the investigation, did not inform Corcoran about the matter. Furthermore, nothing relating to Bailey's internal complaint was placed in her personnel file.

Corcoran had the reputation within Commerce of being a forceful manager with high standards. On one occasion after Corcoran became Bailey's new supervisor, Corcoran requested that Bailey go home to change her clothes because of a dress code violation. On another occasion, Corcoran counseled Bailey on her writing style in e-mail communications. Corcoran also removed several sales people from Bailey's supervision and removed her from a project on which she had been working.

The incident which ultimately led to Bailey's termination occurred on August 12,

2003. Valerie Oakes, who was one of Bailey's subordinates, asked her for assistance on a matter. Bailey responded directly to Oakes with profanity. At Corcoran's request, Oakes documented the incident in an e-mail. Bailey was terminated on August 27, 2003, for inappropriate conduct toward a subordinate and violation of company policies. Corcoran made the decision to terminate Bailey, and she was supported in her decision by Joe Morrissey, who was her supervisor, as well as Deborah Watson of Human Resources.[1]

Bailey filed suit against Commerce in the District Court for the District of Delaware, claiming that her termination by Commerce was motivated by retaliation for her internal complaint against Duncan. The District Court granted summary judgment in favor of Commerce, finding that Bailey failed to produce evidence of a causal link between her protected activity and her termination sufficient to establish a *prima facie* case of retaliation, and, even if Bailey were able to establish causation, she would be unable to rebut the legitimate reasons Commerce set forth to explain its decision to terminate her. Bailey now appeals, challenging the District Court's grant of summary judgment.

II.

We have jurisdiction over the final order of the District Court pursuant to 28

---

[1] In response to Bailey's interrogatories, Commerce indicated that the decision to terminate Bailey was made collectively by Corcoran, Watson, Morrissey and McKelvy. *See* Appellee's App. at 130. However, both Corcoran and Watson clarified in their deposition testimony that Corcoran decided to terminate Bailey, and Morrissey and Watson supported that decision. *Id*. at 150, 165, 227.

U.S.C. § 1291. We review a grant of summary judgment *de novo* and apply the same standard as the District Court. *MBIA Ins. Corp. v. Royal Indem. Co.,* 426 F.3d 204, 209 (3d Cir. 2005). We must examine all of the evidence in the light most favorable to the nonmoving party to determine if there is a genuine issue of material fact. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995). In determining whether a dispute is genuine, the court's function is to decide "whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In order to establish a *prima facie* case of discriminatory retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) the employer took an adverse employment action against her, and (3) there was a causal link between her protected activity and the employer's adverse action. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). In this case, only the third element is at issue. To sustain her claim of retaliation, Bailey must be able to produce evidence of a causal connection between her internal complaint alleging she was sexually harassed by Duncan and the termination of her employment four months later.

In *Kachmar*, we explained that proof of causation may be established in a number of ways. Causation may depend on the temporal proximity between the employee's protected activity and the adverse employment action. *Id*. Temporal proximity can serve as circumstantial evidence "sufficient to raise the inference that [the plaintiff's] protected activity was the likely reason for the adverse action." *Id*. (quoting *Zanders v. National*

5

*R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990)). Absent temporal proximity, "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." *Kachmar*, 109 F.3d at 177. Temporal proximity and a pattern of antagonism, however, "are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Id*.

In the present case, Bailey fails to establish causation on the basis of temporal proximity. The fact that Bailey's termination occurred after she made her internal complaint is not sufficient to infer a causal link, as the elapsed period of four months between her protected activity and termination is not unusually suggestive of retaliatory motive. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing favorably *Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992), which rejected an inference of retaliation where the events were four months apart).

Bailey also fails to establish causation by a "pattern of antagonism" after her internal complaint. Duncan, the supervisor who Bailey claimed sexually harassed her, was terminated and replaced by Corcoran. The circumstances which led to Bailey's termination occurred when she was supervised by Corcoran, who was not aware of the internal complaint or the ensuing investigation, a fact which Bailey acknowledged in her deposition testimony. Thus, without any knowledge of Bailey's internal complaint, Corcoran decided to terminate Bailey following her use of profanity toward a subordinate, and that decision was supported by other Commerce officials. In *Jones v. School District*

6

*of Philadelphia*, 198 F.3d 403, 415 (3d Cir. 1999), we affirmed a grant of summary judgment on a retaliation claim under Title VII where there was no evidence that the principals who made the decision to fire the plaintiff were aware of the protected action. Likewise, here, the District Court correctly entered summary judgment in favor of Commerce because it was Corcoran's decision to fire Bailey and she was unaware of the protected action.

Although temporal proximity and a pattern of antagonism are not the exclusive ways to show causation, the proffered evidence, viewed as a whole, does not raise the inference of retaliation in this case. *See Kachmer*, 109 F.3d at 177. Aside from Bailey's own conclusory assumptions, there is not sufficient evidence in the record to indicate a causal link between her internal complaint and her termination. For this reason, as well as those stated above, the District Court did not err in holding that Bailey failed to meet the required causation element necessary for establishing a *prima facie* case of retaliation.[2]

### III.

We see no error in the District Court's grant of summary judgment in favor of

---

[2] We note that even if Bailey could establish a *prima facie* case of retaliation by showing causation, she would be unable to demonstrate that Commerce's stated reason for terminating her employment was pretextual. Particularly, regarding Bailey's use of profanity, although the record indicates that other employees used profanity when presented with stressful situations at work, the record does not indicate that others directed profanity at their subordinates, as Bailey did in the situation involving Oakes.

7

Commerce.  For all of the above reasons, we will affirm the District Court's judgment.